# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 4, 2012

## STATE OF TENNESSEE v. DANIELLE SIMS

### Appeal from the Circuit Court for Henderson County
### No. 10-144-2     Donald H. Allen, Judge

### No. W2011-02319-CCA-R3-CD  - Filed December 21, 2012

The defendant, Danielle Sims, was convicted of aggravated statutory rape, a Class D felony, and contributing to the delinquency of a minor, a Class A misdemeanor, and received an effective sentence of three years, with eleven months, twenty-nine days to serve at 75% and the remainder on intensive state probation.  On appeal, she argues that the evidence is insufficient to support her rape conviction.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Hewitt Chatman, Assistant Public Defender, for the appellant, Danielle Sims.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On October 25, 2010, a Henderson County Grand Jury indicted the defendant for aggravated statutory rape and contributing to the delinquency of a minor as a result of her sexual contact with a female juvenile runaway from Alabama who came to the defendant's residence in Lexington after meeting her on the Internet.

At the defendant's trial, Patrol Sergeant David Stanhope of the Lexington Police Department testified that he and another officer responded to a domestic disturbance call on April 19, 2010, at the defendant's residence. When they arrived, Lieutenant Donna Herrington was already there and several people, including the defendant and the victim, were standing in the driveway of the residence "yelling back and forth." The defendant told Sergeant Stanhope that she had met the victim earlier that afternoon on East Church Street where the victim had run out of gas. The defendant said she had the victim's vehicle towed to her residence. The officers learned that the victim was seventeen years old and a runaway from Alabama and that the defendant's date of birth was January 11, 1979.

Sergeant Stanhope said that, after learning that the defendant had been untruthful as to how she had met the victim, the officers arrested the defendant and recovered a cellular telephone from her pants pocket. He examined videos contained on the phone and discovered one dated April 17, 2010, that appeared to show the victim in a bed. He also observed text messages related to the victim and to the defendant's arrest.

The victim testified that she was born on February 24, 1993, and that she was seventeen years old on April 19, 2010. She said that she knew the defendant from a social networking website and that they had communicated by telephone as well. The victim told the defendant how old she was and where she was from prior to coming to Lexington. She arrived in Lexington "really late" on Friday, April 16, 2010, and met the defendant at a store. They then went to the defendant's house where the victim slept on a mattress on the floor in the defendant's bedroom. The victim acknowledged that she and the defendant engaged in sexual contact, including digital penetration. She said they both knew what would happen if she were found at the defendant's home. She acknowledged that she appeared on the video recovered from the defendant's cell phone and said that the video was taken in the defendant's bedroom.

On cross-examination, when asked to describe her sexual contact with the defendant, the victim replied, "It was like touching I guess. I don't know." However, when asked if the defendant had penetrated her, she responded, "Yes, sir. . . . I'm not exactly sure how to describe penetration. But we hugged and kissed and . . . I guess like. Just regular penetration. I guess that's what happened." Asked again if penetration had occurred, the victim said, "Yes, there was. I mean it didn't like go all the way, but the way we defined it that would have been sexual penetration." She said she stayed at the defendant's house three nights.

Lieutenant Donna Herrington of the Lexington Police Department testified that on April 17, 2010, she received a report of a juvenile runaway from Alabama who might be in the Lexington area. She was advised that the juvenile might be with the defendant but was

unable to locate the defendant that day. On April 19, 2010, Lieutenant Herrington went to the defendant's residence where she noticed a young girl who matched the description of the juvenile runaway sitting on the tailgate of a pickup truck, and the girl identified herself as the victim. Lieutenant Herrington saw the defendant, who was talking on her cell phone, standing in the yard. The defendant's sister and her boyfriend were also outside. After Sergeant Stanhope arrested the defendant, Lieutenant Herrington downloaded information from the defendant's cell phone relevant to the victim onto a report, which was admitted into evidence. She found the victim's cell phone number in the defendant's phone, as well as text messages dated April 19 from the victim to the defendant. The defendant sent a text message at 6:06 p.m., approximately nine minutes after Lieutenant Herrington arrived on the scene, to "Tonya," which said, "I'm going to jail." Additional text messages sent to "Tonya" included, "I'm going to tell them that you were with me when I towed her home today," "The cops are here," and "I'm going to jail in Alabama."

Lieutenant Herrington said she also downloaded a video from the defendant's cell phone which appeared to depict the victim and was dated April 17 at 9:30 p.m. She placed that particular video on a CD, which was played for the jury.

Caleb Sims, the defendant's nine-year-old son, testified that when the victim came to their house, he and his mother slept on the floor in her bedroom and the victim slept on a futon in the same bedroom. He said he was in the bedroom all night every night that the victim was there and never saw the defendant and the victim "hug or kiss or do anything like that."

The defendant testified that in April 2010, her sister and her sister's husband lived with her and her son. She said she first talked to the victim on the social networking website, MySpace, about two weeks before the victim came to her residence. The victim told her she was seventeen years old but would turn eighteen "in like a week." The defendant did not ask the victim to come to her residence and only learned that she was in the area when the victim called and asked if she could stay with her. The victim arrived on April 16 between 11:30 p.m. and midnight, and the defendant met her at a gas station where she had her car towed to the defendant's residence because she was out of gas. She allowed the victim to sleep in her bed while she and her son slept on the floor. She denied penetrating or "touch[ing] [the victim] in any way, fashion, or form." The defendant said the victim lied when she testified about them having sexual contact.

The defendant said that on April 19, 2010, she called 9-1-1 because she and her brother-in-law were arguing and when her sister intervened, her brother-in-law started hitting her sister. Asked about the video that was played for the jury, the defendant said it depicted a friend of hers, Jacqueline Middleton, and denied that the victim was in the video.

At the conclusion of the trial, the jury found the defendant guilty of aggravated statutory rape and contributing to the delinquency of a minor, as charged in the indictment.

## ANALYSIS

The defendant argues that the evidence is insufficient to support her conviction for aggravated statutory rape "since there was not sufficient proof of penetration." The State disagrees.

In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Aggravated statutory rape is defined as "the unlawful sexual penetration of a victim by the defendant, or of the defendant by the victim when the victim is at least thirteen (13)

but less than eighteen (18) years of age and the defendant is at least ten (10) years older than the victim." Tenn. Code Ann. § 39-13-506(c). "'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body[.]" Id. § 39-13-501(7).

Viewed in the light most favorable to the State, the proof established that the victim was seventeen years old and the defendant was fourteen years older than the victim at the time of their encounter. The victim testified that she and the defendant engaged in sexual contact, including digital penetration. When questioned if the defendant had penetrated her, the victim testified, "Yes, sir. . . . I'm not exactly sure how to describe penetration. But we hugged and kissed and . . . I guess like. Just regular penetration. I guess that's what happened." Asked again if penetration had occurred, the victim said, "Yes, there was. I mean it didn't like go all the way, but the way we defined it that would have been sexual penetration." After the police arrived at the defendant's residence, the defendant sent text messages to a friend that said, "I'm going to jail," "I'm going to tell them that you were with me when I towed her home today," "The cops are here," and "I'm going to jail in Alabama." Accordingly, we conclude that the evidence is sufficient to sustain the defendant's conviction for aggravated statutory rape.

## CONCLUSION

Based on the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE